UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------:

UNITED STATES OF AMERICA,     : Case No.: 25-MJ-2397

                   Plaintiff,     :

       v.                        :

CARLOS RIVAS,                 : New York, New York

               Defendant.    : August 6, 2025

----------------------------:


TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE ROBERT W. LEHRBURGER

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:     UNITED STATES ATTORNEY'S OFFICE
                  SOUTHERN DISTRICT OF NEW YORK
                  BY: Rita Maxwell, AUSA
                  One St. Andrew's Plaza
                  New York, New York 10007

For Defendant:     FEDERAL DEFENDERS OF NEW YORK
                  BY: Joy Chen, Esq.
                  52 Duane Street
                  New York, New York 10007




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                    THE DEPUTY CLERK:  Good afternoon,
 2     parties.  We're here for an initial presentment in
 3     U.S. v. Carlos Rivas; 25-MJ-2397.
 4                    MS. MAXWELL:  Good afternoon, your Honor.
 5                    Assistant U.S. Attorney, Rita Maxwell, on
 6     behalf of the government.  I'm joined at counsel
 7     table by Special Agent Rachel Kidd of Homeland
 8     Security Investigations.
 9                    THE COURT:  Good afternoon.
10                    MS. CHEN:  Good afternoon, your Honor.
11                    Federal Defenders, by Joy Chen, on behalf
12     of Carlos Rivas.  He's present and being assisted by
13     a Spanish interpreter.
14                    THE COURT:  Good afternoon.  Please be
15     seated.
16                    Mr. Rivas, I see you are using the
17     services of an interpreter.  Can you hear and
18     understand what the interpreter is saying?
19                    THE DEFENDANT:  Yes.
20                    THE COURT:  Okay.
21                    I'll ask for the date and time of arrest,
22     please, from the government.
23                    MS. MAXWELL:  The arrest was today,
24     August 6th, at approximately 8:40 a.m.
25                    THE COURT:  Thank you.
```

```
 1                  THE INTERPRETER:  I'm sorry.  I could not
 2       hear.  Can you repeat again?
 3                  MS. MAXWELL:  Today, August 6th, at
 4       approximately 8:40 a.m.
 5                  THE INTERPRETER:  Your Honor, can I take
 6       a moment to fix the headset?  It will only take a
 7       moment.
 8                  THE COURT:  Of course.
 9                  (Discussion held off the record.)
10                  THE INTERPRETER:  Thank you, your Honor.
11                  THE COURT:  Of course.
12                  Please proceed.  I just want to make
13       sure -- since we had a little potential change of
14       technology, I want to confirm.
15                  Mr. Rivas, can you still hear and
16       understand what the interpreter is saying?
17                  THE DEFENDANT:  Yes.
18                  THE COURT:  So the purpose of this
19       proceeding is to advise you of certain rights you
20       have, make sure you've been informed of the charges
21       that have been brought against you pursuant to a
22       complaint, make sure you have an attorney
23       representing you, and determine if there are any
24       conditions upon which you should be released pending
25       further proceedings.
```

```
 1                      (Pause in proceedings.)
 2              THE COURT:  Okay.  Just confirm, again,
 3      can -- Mr. Rivas, can you hear and understand what
 4      the interpreter is saying now that you have a
 5      changed headset?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Okay.  Good.  So I'm going to
 8      begin with some of your rights.
 9              You have the right to remain silent.
10      You're not required to make any statements.  If
11      you've already made statements to authorities, you
12      need not make any further statements to them.  Any
13      statements that you do make can be used against you.
14              You have the right to be released, either
15      on conditions or without conditions, pending trial,
16      unless I find there are no conditions that would
17      reasonably assure your presence at future court
18      appearances and the safety of the community.
19              If you are not a U.S. citizen, you have
20      the right to request that a government attorney or a
21      law enforcement official notify a consular officer
22      from your country of origin that you have been
23      arrested.  In some cases, a treaty or other
24      agreement requires this be done anyway.
25              You have the right to be represented by
```

1    an attorney during all court proceedings, including

2    this one, and all questioning by authorities.  You

3    have the right to hire your own attorney, but if you

4    cannot afford one, I will appoint one to represent

5    you.

6            Do you understand your rights as I've

7    explained them so far?

8            THE INTERPRETER:  Yes.

9            THE COURT:  Defense counsel, have you

10   received -- oh, actually, we need to appoint

11   counsel.

12           So I'm going to turn to appointment of

13   counsel for you.  To do that, I have in front of me

14   a financial affidavit that has a place for your

15   signature.

16           Did you sign the financial affidavit?

17           THE DEFENDANT:  Yes.

18           THE COURT:  So I just remind you that it

19   does say you signed under penalty of perjury, so if

20   there's false information, you could be prosecuted

21   for perjury.  So to help avoid that, if anything

22   occurs to you later on that's not correct about

23   what's in here, just let your attorney know, and I'm

24   sure she'll take care of it.

25           With that, everything looks in order in

1    the affidavit, and I am appointing counsel for you,

2    and Ms. Chen is now your counsel.

3              All right.  Ms. Chen, have you received a

4    copy of the complaint and reviewed it with your

5    client?

6              MS. CHEN:  Yes, your Honor, as to both,

7    and we would waive a public reading.

8              THE COURT:  All right.

9              Because this is a complaint, you have the

10   right to what's called a preliminary hearing in

11   which the government will have the burden to show

12   that there's probable cause to believe that the

13   crime for which you are being charged has been

14   committed and that you are the person who committed

15   it.

16             At the hearing, you or your counsel would

17   be entitled to cross-examine any witnesses and

18   introduce evidence; however, the preliminary hearing

19   will not be held if you are first indicted by a

20   grand jury because it will mean that the grand jury

21   has found probable cause.  We'll set a date for that

22   preliminary hearing in just a bit.

23             And that brings us to the question of

24   detention or release.  What is the government's

25   position?

```
1                    MS. MAXWELL:  Your Honor, the government
2      is seeking detention under 18 USC § 3142(f)(1)(E).
3                    THE COURT:  Okay.
4                    And what is the defense position?
5                    MS. CHEN:  Mr. Rivas would like to argue
6      for release today, your Honor.
7                    THE COURT:  All right.
8                    So I'll hear from the government first in
9      terms of why you think the defendant should be
10     detained.
11                   MS. MAXWELL:  The government is seeking
12     detention primarily on risk of nonappearance.  As
13     the Court is aware, the defendant is charged with
14     possession of child pornography, including images
15     and videos of prepubescent minors.
16                   The defendant is facing a serious charge
17     with a very preliminary guidelines range greater
18     than five years.  The evidence is strong.  It's the
19     defendant's electronic service provider account, and
20     the uploads are from --
21                   THE INTERPRETER:  I'm sorry.  Can I ask
22     that you slow down a little?
23                   MS. MAXWELL:  Of course.  Yes.  I'll
24     start that piece over.
25                   When we talk about strength of evidence,
```

1    it is strong.  It is the defendant's electronic

2    service provider account, and the uploads were from

3    IP addresses where he had access, a family residence

4    and a school where he worked.  There are significant

5    collateral consequences to today's charge, including

6    deportation after any conviction.

7            And the government would note that it

8    agrees with Pretrial on the risk of nonappearance.

9    There are several factors there that -- immigration

10   status.  The defendant is a citizen of El Salvador.

11   There is a -- he has an El Salvadoran passport.  He

12   is presently under removal proceedings.  And the

13   risk of nonappearance here, the incentive to not

14   appear in court is quite high.

15           THE COURT:  Of course, you did just

16   reference Pretrial Services.  But to be clear, they

17   are actually recommending release on conditions

18   notwithstanding the items you have identified; is

19   that correct?

20           MS. MAXWELL:  That is correct.  Although,

21   as I understand it, Pretrial does not consider all

22   of the factors that the government takes into

23   account when we make our arguments.

24           THE COURT:  Understood.

25           MS. MAXWELL:  And while the government is

1    seeking detention primarily on risk of nonappearance

2    grounds, the government notes that this is a type of

3    crime that is typically committed in private, in the

4    home, and, indeed, here uploads of child pornography

5    occurred in a home address.

6            For all of these reasons, the government

7    is seeking detention today.

8            THE COURT: Okay. Thank you.

9            All right. I'll hear from the defense.

10           MS. CHEN: Yes, your Honor. For the

11   second time today, I will say the experts in this

12   case, Pretrial Services, are, of course,

13   recommending release, and I believe the Court should

14   defer to that judgment. Mr. Rivas would be amenable

15   to all the conditions that Pretrial has recommended.

16           I'll address the presumption first, your

17   Honor. Again, I think the presumption is amply

18   rebutted by Mr. Rivas' circumstances.

19           First, with respect to risk of flight,

20   Mr. Rivas has resided in this country for some years

21   now, according to the Pretrial report, since 2017.

22   For at least the last three years, he has lived in

23   the same residence with his sister, Laura, and his

24   sister-in-law, Rayonni. They live in the same home.

25           And just about a block down the street,

1    he has other family who reside there.  That includes

2    his mother and his two younger sisters, one of whom

3    is in court today to support him.  Her name is

4    Angela.  Angela is gainfully employed, and she would

5    be willing to serve as a co-signer on a bond today,

6    your Honor.  We are also working to secure another

7    co-signer, one of Mr. Rivas' other sisters.

8              The family is very close.  Mr. Rivas was

9    telling me just today that they get together all the

10   time for family barbecues in the neighborhood.  They

11   are very supportive of him.  And Mr. Rivas has been

12   gainfully employed for the last significant period

13   of time.  He has a valid work authorization in this

14   country.  And with that authorization, he has been

15   working for at least the last several months at

16   Bryan's Deli as a cashier and cook.  He makes

17   approximately $700 a week at that job, and Pretrial

18   has confirmed that employment information.  And

19   Mr. Rivas can go back to that job if released today.

20             I understand the Court may have some

21   concerns in light of the reported immigration

22   history, but what I will note is that Mr. Rivas'

23   background indicates that he is not the type to

24   flee, in part because he actually has a pending

25   green card application in this country.  He also has

1    an immigration attorney.  That immigration attorney,
2    I believe, is based in Maine, is a gentleman by the
3    name of Mr. Studwell.  I have actually some mail
4    from his immigration attorney with me.  Mr. Rivas
5    would be willing to surrender his El Salvadoran
6    passport today.  I have that in my possession.  We
7    can provide that to Pretrial Services immediately.
8            So all to say, Judge, I believe, with
9    respect to the presumption of detention for the
10    purposes of flight risk, that is rebutted.
11            With respect to danger, I'll emphasize
12    the allegations in this complaint are completely
13    aberrational for Mr. Rivas.  He has no prior
14    criminal history in this country dating back to, you
15    know, it seems his last known -- his entry in 2017.
16    No criminal history whatsoever.
17            The conduct also alleged in this case is
18    about a year old.  And it's noteworthy that the
19    government, at least as early as October 2024, was
20    aware not only of his identity, but also of his
21    whereabouts, and so they have allowed him to remain
22    in the community for the last many, many months
23    despite being able to apprehend him sooner if they
24    truly believed he was a danger.
25            And finally, your Honor, with respect to

1    the weight of the evidence, I would push back on the

2    government's representation that it is strong.  I

3    think they've indicated that certain IP addresses

4    were linked to a school where he worked and a

5    residence.  School -- as your Honor knows, many

6    people pass through a school.  There are any number

7    of employees who work there.

8              With respect to the residence, I

9    understand this is a multi-family home.  Unknown how

10   many guests and visitors were passing through that

11   home.  And so I would just push back against that

12   representation by the government.  I think the

13   conditions would absolutely reasonably assure

14   Mr. Rivas' appearance and, I'm sorry, the safety of

15   the community.

16             The recommendation by Pretrial Services

17   includes an extensive list of conditions, all of

18   which Mr. Rivas would be willing to submit to.

19   Unless the Court has any questions, I'll submit.

20             THE COURT:  So you mentioned that he has

21   a green card application.  Is he already in removal

22   proceedings?

23             MS. CHEN:  I have very limited

24   information, your Honor.  All I can say -- I wasn't

25   able to speak to Mr. Caldwell earlier today.  I

1    understand from a conversation with the

2    government -- and I don't want to hold them to

3    that -- that there was previously potentially an

4    order of removal that was actually dismissed without

5    prejudice.  I don't believe there's a final removal

6    order at this time.  But that's all --

7              THE COURT:  There's no detainer on it?

8              MS. CHEN:  I believe there is a detainer,

9    but, of course, this Court's consideration about

10   whether he's a flight risk or a danger --

11             THE COURT:  I realize it's not for me,

12   but my question -- this is just leading up a

13   question for you.

14             What happens if I let him out on

15   conditions and he is released here today, what do

16   you think might happen?

17             Or in other words, you know, he could be

18   taken into custody by ICE at some point.

19             MS. CHEN:  Sure.

20             THE COURT:  He does have an immigration

21   attorney already, so that's good.

22             MS. CHEN:  That's true, your Honor.  And

23   I won't speak for immigration authorities on this.

24             THE COURT:  Yeah.

25             MS. CHEN:  What I will say is the Bail

```
 1    Reform Act and case law interpreting the Act is very
 2    clear that when it comes to risk of flight, what is
 3    in front -- what the Court's primary concern should
 4    be is Mr. Rivas' --
 5                THE COURT:  And I'm not saying it for the
 6    Court's concern.  I'm saying it for your client's
 7    concern.  Just want to make sure that --
 8                MS. CHEN:  He understands the risk.
 9                THE COURT:  Okay.
10                MS. CHEN:  I have advised him about the
11    risk.
12                THE COURT:  Okay.
13                MS. CHEN:  It's one that, nevertheless,
14    he's willing to entertain, especially given that,
15    you know, he has responsibilities at home.  He has a
16    job.  He has family here.
17                THE COURT:  Okay.  All right.
18                Does the government wish to respond?
19                MS. MAXWELL:  Just briefly, your Honor.
20    Upon the strength of the evidence, I would note that
21    the uploads that are occurring to Mr. Rivas' account
22    with his e-mail address and his identification are
23    happening at IP addresses at a home associated with
24    his family and the school where he worked.  I don't
25    believe there should be any sort of weight assigned
```

1   to the fact that other people are in the school.

2   The account is his own account.

3          On the other pieces of the -- your Honor,

4   I would just say that there is a significant risk of

5   flight, given the charges and the potential sort of

6   ramifications, collateral consequences of a

7   conviction and these charges here today.

8          Thank you, your Honor.

9          THE COURT:  Okay.  Thank you.

10         How old is the sister that he lives with?

11         MS. CHEN:  Court's indulgence.

12         She's 29, your Honor.

13         THE COURT:  Okay.  Great.

14         All right.  And you said one of his

15  sisters is here today.  Where is she?

16         MS. CHEN:  Yes.  Angela.

17         THE COURT:  Okay.  And how old is Angela?

18         MS. CHEN:  Angela is 19.

19         THE COURT:  Okay.  And she would be one

20  of the co-signers you would propose?

21         MS. CHEN:  She would be one of the

22  co-signers.

23         THE COURT:  And where does she work?

24         MS. CHEN:  KFC.

25         THE COURT:  Oh, she's the KFC person.

1          MS. CHEN:  Yes.

2          THE COURT:  Okay.

3          All right.  So look.  So my obligation is

4    to determine if there are conditions upon which the

5    defendant can be released that will reasonably

6    assure the safety of the community and the presence

7    of the defendant in future proceedings.

8          Government has said that this is a

9    presumption case, meaning there's a presumption that

10   there are no such conditions.  But that presumption

11   can be met and overcome.  If it is overcome, then

12   the government has the burden to show that there are

13   no conditions that can reasonably assure the safety

14   of the community, and they have to show that by

15   clear and convincing evidence, or that there are no

16   conditions that can reasonably assure the presence

17   of the defendant in future proceedings, which they

18   would have to prove by a preponderance of the

19   evidence.

20         Let me start with the nature and

21   circumstances of the crime charged.  It obviously is

22   a very serious offense.  It involves very -- conduct

23   of great concern to the Court and to the community,

24   obviously.  It could have a significant penalty.

25   Although, I will say, based on what the government

1    has said, compared to many other instances where the

2    presumption applies, the potential penalty did not

3    sound as great.

4          I have to consider the weight of the

5    evidence.  And it sounds like, for the most part,

6    the evidence is pretty strong.  Obviously, there are

7    parts of that to be explored, but that's something I

8    take into account.

9          And then in terms of nature and

10   circumstances and background and history of the

11   particular defendant -- of criminal history, except

12   for the reentry issue -- or the entry issue, I

13   should say.  And he does seem to have a stable

14   family life here with his sister and his other

15   sisters and mother down the road.  It's notable that

16   he is employed.  And it's not apparent that he has

17   any ties in El Salvador.

18         So there are obviously concerns that

19   would point to concerns -- I'm sorry, concern for

20   risk of flight, such as being a citizen of

21   El Salvador, his immigration status here and the

22   tenuousness of that.  That can be dealt with mainly

23   by the fact that he will -- he has -- or has his

24   El Salvador passport, which is ready to be

25   surrendered, and he has an immigration lawyer.  So

1  I'm less concerned about actual motivation to flee

2  or risk of flight due to that.

3          And there are conditions that can address

4  the concerns that go along with the nature of the

5  offense.  And I see nothing about what's been

6  presented that suggests that now that he has been

7  apprehended and if he were subject to the conditions

8  imposed, that there's a risk that there would be

9  further offending conduct.

10          So I am going to grant release on

11  conditions because I find that the presumption has

12  not been overcome and, even if it were, that the

13  government has not met its burdens on either flight

14  or detention -- I'm sorry, flight or safety.

15          So here are the conditions:

16          There is going to be a bond posted in the

17  amount of $100,000 signed by two financially

18  responsible people in addition to the defendant

19  himself.  The defendant is restricted to travel in

20  the Southern and Eastern Districts of New York.  He

21  is to surrender all travel documents and passports

22  today.

23          He will be under Pretrial supervision as

24  directed.  He is to maintain or seek employment.  He

25  will have mental health evaluation and treatment as

1    directed by Pretrial Services.  He will have drug

2    testing and treatment as directed by Pretrial

3    Services.

4         He will be under a curfew, which will be

5    enforced by location monitoring at hours that are

6    set by Pretrial Services.  He is to refrain from use

7    or unlawful possession of a narcotic drug or other

8    controlled substance unless prescribed by a licensed

9    medical provider.

10         MS. CHEN:  I'm sorry, your Honor, to

11    interrupt.  My client can't hear.  If we could,

12    perhaps, have another headset ...

13         THE COURT:  That's not a problem.

14         (Pause in proceeding.)

15         MS. CHEN:  Your Honor, I'm sorry.  My

16    client was having trouble hearing pretty much from

17    the moment the Court began reading the conditions.

18         THE COURT:  All right.  I'll start over.

19    That's fine.

20         MS. CHEN:  Thank you.

21         THE COURT:  Okay.  Can you hear and

22    understand, Mr. Rivas, what the interpreter is

23    saying?

24         THE DEFENDANT:  Yes.  Yes.

25         THE COURT:  Okay.  All right.  Good.

```
1              So, as I said, you are going to be

2     released upon conditions, and there are quite a

3     number of them.  I am going to tell you what they

4     are now, and your attorneys are going to explain

5     them to you further.

6              A bond will be signed by you and two

7     financially responsible people.  The bond will be an

8     amount of $100,000.  You will report to Pretrial

9     Services as directed.  You will surrender all

10    passports and make no new applications.  Passports

11    will be surrendered today.  Your travel will be

12    restricted to the Southern and Eastern Districts of

13    New York.

14             You will maintain or seek verifiable

15    employment.  You will have a mental health

16    evaluation and treatment as recommended by Pretrial

17    Services.  You will have drug testing and treatment

18    as directed by Pretrial Services.  You'll be under a

19    curfew, the hours of which will be set by Pretrial

20    Services, and you will be subject to electronic

21    location monitoring.

22             You will refrain from use or unlawful

23    possession of a narcotic drug or other controlled

24    substances unless prescribed by a licensed medical

25    practitioner.  You are to avoid all contact with any
```

1    alleged victims and potential witnesses of the

2    crime.  You are to refrain from possession of a

3    firearm, destructive device or other dangerous

4    weapon.

5           There's an item here, and I just want to

6    make sure I understand what it's referring to:

7    Number 9, "Specified restrictions on personal

8    association, place of abode and travel."

9           Were those intended to be something other

10   than what is stated in the other items of Pretrial's

11   recommendations?

12          MS. CHEN:  No, your Honor.

13          THE COURT:  Okay.  Good.

14          All right.  You are to have access to

15   only one phone.  You are to surrender all other

16   Internet-capable devices and to authorize monitoring

17   of any Internet-capable device by Pretrial Services

18   as directed.

19          You shall not view, purchase, possess or

20   distribute any form of pornography depicting

21   sexually explicit images of minors.  You must comply

22   with the requirements of the cyber crime management

23   program as directed by Pretrial Services.  Your use

24   of the Internet is restricted to computer devices

25   approved, monitored and/or managed by Pretrial

```
1    Services.  And you must allow Pretrial Services to
2    configure, manage and/or install monitoring software
3    on any approved Internet-capable device.  So that
4    would apply to anything in your residence, even if
5    it may be used by other people.
6              All right.  Were there any other
7    conditions that either counsel is requesting?
8              Anything from the government?
9              MS. MAXWELL:  Yes, your Honor.  We would
10   request two additional conditions.  The first
11   being -- and I think this is typical in some child
12   pornography cases where the defendant resides with
13   others -- that the electronic devices of others in
14   the home be password protected and not provided to
15   the defendant.
16             And the second piece is no contact with
17   minors, your Honor.
18             THE COURT:  Any objection to either of
19   those?
20             MS. CHEN:  Only with respect to the
21   second, your Honor.  I would ask that my client be
22   given permission to have contact with his 11 -- I
23   believe 11-year-old sister.
24             THE COURT:  It says 12 in the Pretrial --
25             MS. CHEN:  I'm sorry, 12.
```

```
 1                    THE COURT:  Well, of course.
 2                    MS. CHEN:  No objections otherwise.
 3                    THE COURT:  Okay.
 4                    All right.  So the defendant will have no
 5         contact with minors, other than his 12-year-old
 6         sister.  And any Internet-capable device in the home
 7         of the family where he lives is to be password
 8         protected by Pretrial Services.
 9                    Okay.  Anything else from the government
10         on the conditions?
11                    MS. MAXWELL:  No, your Honor.
12                    THE COURT:  Anything from the defense on
13         the conditions?
14                    MS. CHEN:  No, your Honor.
15                    THE COURT:  All right.  So those are the
16         conditions that are going to be imposed.  And I'm
17         going to give you some warnings that are very
18         important.  So, again, please listen because there
19         can be very serious consequences if you do not
20         follow these conditions.
21                    If you fail to appear in court as
22         required, or if you violate any of the conditions of
23         your release, a warrant will issue for your arrest.
24         You and anyone who signed the bond will each be
25         responsible for paying its full amount, and you may
```

1    be charged with the separate crime of bail-jumping,

2    which can mean additional jail time and/or a fine.

3           In addition, if you commit a new offense

4    while you are on release, then in addition to the

5    sentence prescribed for that offense, you will be

6    sentenced to an additional term of imprisonment of

7    not more than 10 years if that offense is a felony,

8    or not more than one year if it's a misdemeanor.

9    This term of imprisonment will be executed after any

10   other sentence of imprisonment is completed.

11          While you are awaiting trial, I warn you

12   not to have any contact with or engage in any

13   intimidation of potential or designated witnesses or

14   jurors, not to engage in any intimidation of any

15   court officer, not to engage in any conduct that

16   would obstruct any investigation by law enforcement.

17          Do you understand?

18          THE DEFENDANT:  Yes.

19          THE COURT:  All right.  And you do have a

20   right to appeal if you do not agree.

21          Anything else from the government?

22          MS. MAXWELL:  No, your Honor.

23          THE COURT:  What are we doing with

24   respect to a preliminary hearing date?

25          MS. CHEN:  We would ask to waive to the

1    30th day, your Honor.

2              THE COURT:  All right.  So that takes us

3    to the 5th of September.

4              Anything else from the defense?

5              MS. CHEN:  No, your Honor.  Thank you.

6              THE COURT:  All right.  We are adjourned

7    on this matter.

8              And good luck to you, Mr. Rivas.

9

10                            0o0

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          C E R T I F I C A T E

4

5        I, Adrienne M. Mignano, certify that the

6    foregoing transcript of proceedings in the case of

7    United States v. Carlos Rivas; Docket #23MJ2397 was

8    prepared using digital transcription software and is

9    a true and accurate record of the proceedings.

10

11

12   Signature  _____
                    *Adrienne M. Mignano*

13              ADRIENNE M. MIGNANO, RPR

14

15   Date:      September 22, 2025

16

17

18

19

20

21

22

23

24

25

AMM TRANSCRIPTION SERVICE - 631.334.1445